# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

HONEYWELL INTERNATIONAL, INC.,    :
et al.,    :
   :
         Plaintiffs,    :
    v.    :    C. A. No. 03-242-MPT
   :
UNIVERSAL AVIONICS SYSTEMS    :
CORP., et al.,    :
   :
         Defendants.    :

## MEMORANDUM OPINION

---

Thomas C. Grimm, Esquire and Kristen M. Healey, Esquire, Morris, Nichols, Arsht & Tunnell, 1201 N. Market Street, P.O. Box 1347, Wilmington, Delaware 19899.
     Of Counsel: Steven D. McCormick, Esquire, Kirkland & Ellis LLP, Chicago, Illinois and Sarah Slover, Esquire, Mayer, Brown, Rowe & Maw LLP, New York, New York.
*Attorneys for Honeywell International, Inc. and Honeywell Intellectual Properties, Inc.*

Frederick L. Cottrell, III, Esquire and Alyssa M. Schwartz, Esquire, Richards, Layton & Finger, One Rodney Square, P.O. Box 551, Wilmington, Delaware 19899.
     Of Counsel: William G. Todd, Esquire and Scott J. Bornstein, Esquire, Greenberg Traurig, LLP, 200 Park Avenue, 34th Floor, New York, New York 10166. Brian A. Weinberger, Esquire, Greenberg Traurig, LLP, 2375 Camelback Road, Suite 700, Phoenix, Arizona 85016.
*Attorneys for Universal Avionics Systems Corp.*

---

Wilmington, Delaware
Date: November 1, 2005

Thynge, U.S. Magistrate Judge

On December 8, 2004, a jury found in favor of plaintiffs Honeywell International, Inc. and Honeywell Intellectual Properties, Inc. (herein collectively referred to as, "Honeywell"), and returned a verdict against defendant Universal Avionics Systems Corporation (herein referred to as, "Universal") of infringement of Honeywell's valid U.S. Patent, Number 4,914,436 (herein referred to as, "the '436 patent") for developing, marketing and delivering its Terrain Awareness Warning System ("TAWS"). The jury awarded Honeywell reasonable royalties in the amount of $5,448,000.00 to compensate for that infringement.

Successive to the verdict, Universal moved for judgment as a matter of law ("JMOL"). Universal contends that its JMOL motion supports its subsequent motion to stay the entry of an injunction. Universal filed its motion to stay the entry of an injunction, in part, as a response to Honeywell's motion for a permanent injunction. Addressed in this opinion are Honeywell's motion for a permanent injunction against Universal and Universal's motion to stay entry of an injunction.

Honeywell directs the court to prevailing precedent, that, absent unusual circumstances, an injunction will issue when a jury finds that a defendant infringed a valid patent.[1] Honeywell asserts that the rationale for such well-established precedent lies in the concept that a valid patent bestows upon the inventor a property right, which includes the right to exclude others from infringing.[2] Honeywell thereby maintains that the jury's verdict entitles it to a permanent injunction prohibiting Universal from further

---

[1] *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1247 (Fed. Cir. 1989); *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281 (Fed. Cir. 1988); *Genentech, Inc. v. Wellcome Foundation, Ltd.*, 826 F. Supp. 828, 829 (D. Del. 1993).
[2] *Richardson*, 868 F.2d at 1246-47.

2

infringement of the '436 patent.

Universal contends that an injunction is unnecessary because, since the verdict,

it has designed around the patent by eliminating the Destination Determination function,

which was the focus of Honeywell's infringement position at trial. Universal further

maintains that its new design will gain market acceptance, thereby limiting the

possibility that Universal would revert back to any iteration not "colorably different" than

what was found to infringe. Universal additionally argues that an injunction is not

required because monetary damages are an adequate remedy, and there is no

irreparable harm. In the alternative, Universal contends that its motion for JMOL

challenges the verdict, upon which Honeywell's motion is based, and thus, warrants a

stay of the entry of an injunction.

After careful consideration of the arguments, and for the reasons detailed below,

the court grants Honeywell's motion for a permanent injunction and denies Universal's

motion for stay of entry of a permanent injunction.

## DISCUSSION

### Law Governing Honeywell's Motion for Permanent Injunction

The starting point regarding injunctive relief in patent cases is 35 *U.S.C.*

§ 283, which recites:

> The several courts having jurisdiction of cases under this title may
> grant injunctions in accordance with the principles of equity to
> prevent the violation of any right secured by patent, on such terms
> as the court deems reasonable.[3]

Upon a determination of whether the court will grant a proposed injunction, the

---

[3] 35 *U.S.C.* § 283.

3

court will review Rule 65(d) of the Federal Rules of Civil Procedure, which governs the

form and scope of an injunctive order. Rule 65(d) provides:

> Form and Scope of Injunction or Restraining Order. Every order
> granting an injunction and every restraining order shall set forth the
> reasons for its issuance; shall be specific in terms; shall describe in
> reasonable detail, and not by reference to the complaint or other
> document, the act or acts sought to be restrained; and, be binding
> only upon the parties to the action, their officers, agents, servants,
> employees, and attorneys, and upon those persons in active
> concert or participation with them who receive actual notice of the
> order by personal service or otherwise.

The purpose of Rule 65(d) is to insure that the injunction, when granted, will not be too

broad in scope, and thus in application.

Therefore, the court is granted broad authority under the patent statute regarding

injunctions. Injunctive relief is a matter of discretion and is not automatic since the

particular equities of a case are to be weighed;[4] however, the general rule is "that an

injunction will issue when infringement has been adjudged, absent sound reason for

denying it."[5] In *Richardson,* the Federal Circuit noted:

> Infringement having been established, it is contrary to the laws of
> property, of which the patent law partakes, to deny the patentee's
> right to exclude others from use of his property.[6]

The preference to grant injunctions for infringement is directly tied to the principle that

"the right to exclude recognized in a patent is but the essence of the concept of

---

[4] *See Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770, 772 (Fed. Cir. 1993)(stating that "[w]hile the right to exclude is the essence of the concept of property, district courts are, nevertheless, given broad discretion under 35 U.S.C. § 283 to determine whether the facts of a case warrant the grant of an injunction and to determine the scope of the injunction" (footnotes omitted)).

[5] *Richardson*, 868 F.2d at 1247 (citing *W.L. Gore*, 842 F.2d at 1281).

[6] *Id.* at 1246-47 (citing 35 *U.S.C.* § 261).

4

property."[7] As a result, the presumption is that an injunction is warranted when an adjudication of infringement has been rendered.

Nevertheless, when deciding whether to grant a permanent injunction, the court "must consider all circumstances, including the adequacy of legal remedy, irreparable injury, whether the public interest would be served, and the hardship on the parties and third parties."[8] While the court may give each equitable factor whatever weight it desires, with no single element controlling, both the Federal Circuit and this court have stated that:

> In matters involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement[9]. . . . The Patent owner is entitled to a presumption of irreparable harm as a result of the jury's finding of infringement.[10] This presumption derives in part from the finite term of the patent grant, for patent expiration is not suspended during litigation, and the passage of time can work irremediable harm.[11]

Thus, two noteworthy presumptions govern: first, after infringement has been established, an injunction is presumed to be warranted and will issue absent sound reasons for denial;[12] and second, irreparable harm is presumed once a clear showing of infringement has been found by a jury verdict.[13]

---

[7] *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542,1548 (Fed. Cir. 1983).

[8] *E.I. duPont de Nemours & Co. v. Phillips Petroleum Co.*, 659 F. Supp. 92, 94 (D. Del. 1987)(citing *Roche Products v. Bolar Pharmaceutical Co.*, 733 F.2d 858, 865-66 (Fed. Cir. 1984)); *Shiley Inc. v. Bentley Laboratories, Inc.*, 301 F. Supp. 964, 969 (C.D. Cal. 1985), *aff'd*, 794 F.2d 1561 (Fed. Cir. 1986).

[9] *Richardson*, 868 F.2d at 1247 (citing *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987)).

[10] *Ciena Corp. v. Corvis Corp.*, 334 F. Supp. 2d 610, 612 (D. Del. 2004).

[11] *Richardson*, 868 F.2d at 1247 (citing *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987)).

[12] *Richardson*, 868 F.2d at 1247; *KSM Fastening Sys. v. H.A. Jones Co., Inc.*, 776 F.2d 1522, 1524 (Fed. Cir. 1985); *Tristrata Tech., Inc. v. ICN Pharmaceuticals, Inc.*, No. 01-150 JJF, 2004 WL 856595, at *1 (D. Del. April 12, 2004)(citing *W.L. Gore*, 842 F.2d at 1281).

[13] *Richardson*, 868 F.2d at 1247; *Ciena Corp.*, 334 F. Supp. 2d at 612.

### Positions of the Parties

#### Universal's Contentions

Universal argues that a permanent injunction is inappropriate and unnecessary, because the circumstances of this case do not fit the design of such relief. Universal bases its analysis upon the notion that since permanent injunctions are devised to prevent commercial injury on a "going-forward basis" and because SCN 11.0[14] has been abandoned, future injury has been eliminated along with the need for an injunction. Universal further contends that an injunction is unwarranted because its TAWS system no longer infringes since it has moved on from the TAWS containing SCN 11.0, the previous configuration that was litigated. As noted above, Universal contends that, after the verdict, it modified its TAWS product by creating a new software protocol, SCN 11.2, which eliminates the Destination Determination function previously contained in the infringing TAWS units. Universal asserts that the modification "designed around" the Destination Determination Wedge in such a manner that the product no longer infringes.[15] Universal submits that, as a result of its software revision, there is no need for it to revert back to the infringing SCN 11.0 design or any related iterations.

Universal also makes several arguments as to why Honeywell cannot demonstrate irreparable harm. First, Universal contends that there is no exclusionary

---

[14] The previous TAWS product contained SCN 11.0, which was found to infringe. SCN 11.1, another predecessor software to SCN 11.2, was introduced in August 2004, and, as noted by Universal, was not part of the December 2004 trial because it did not relate to the accused Minimum Ground Clearance Boundary (MGCB) function. *See* D.I. 181at 2 ¶ 5 n.2 (Declaration of Patrick Krohn).

[15] According to Krohn's declaration, the Destination Determination Wedge was removed from the source code and has been replaced by logic that selects the nearest runway based upon distance from the aircraft. Universal contends that the new design is non-infringing because it is based solely on distance and does not rely on alignment or an equivalent function as an operating parameter for MGCB. According to Universal, the change is significant since the former MGCB determination of the destination airport or runway employed the alignment or heading feature required by limitation 5 of patent claim 1.

right should Universal prevail on its post-trial JMOL motion.  Second, according to
Universal, Honeywell cannot demonstrate irreparable harm should an injunction not be
issued because it waited twelve years to assert the '436 patent, thereby confirming no
injury.  Universal maintains that the twelve year delay places an additional burden upon
Honeywell to obtain injunctive relief.  Third, Universal argues that Honeywell cannot
demonstrate irreparable harm as a result of infringement since it surrendered exclusivity
by licensing the '436 patent to select entities.

Next, Universal argues that the balance of the equities do not favor granting an
injunction.  In support of that premise, Universal relies on the testimony of Frank Daly,
President of Honeywell's Air Transport Systems Division, to illustrate that neither an
injunction nor Universal's activities will have a substantial impact on Honeywell's market
position or performance.  Universal argues that Daly's testimony proves that the
equities do not justify the issuance of a permanent injunction because, "regardless of
the hardship to Universal, the requested injunction will not provide a countervailing
benefit to Honeywell."

Universal also submits that Honeywell has an adequate remedy at law in the
form of monetary damages, which refutes the need for injunctive relief.  Universal
contends, albeit absent any supporting citation, that under well-established law, money
damages constitute an adequate remedy.  Universal asserts that it "is a viable,
financially sound company which can provide compensation for any losses sustained by
Honeywell."  Seemingly, Universal opines that its solvency eliminates the uncertainty of
recovering the $5,448,000.00 verdict and thereby, concomitantly extinguishes the need
for an injunction.

7

Moreover, Universal baldly submits, without any justification, that public interest does not warrant the issuance of an injunction.

Finally, Universal propounds that Honeywell's proposed injunction does not conform to Rule 65(d).[16]   To understand Universal's position, a review of Honeywell's originally-proposed injunctive order is required.  In its original proposed order, Honeywell sought to enjoin Universal "from directly or indirectly infringing, or contributing to or inducing the infringement of, U.S. Patent 4,914,436, including, but not limited to, continuing the manufacture, use, sale, or offering for sale of its Terrain Awareness and Warning System."  Universal contends that the order lacks requisite specificity and is overly broad and imprecise in its description, in particular by not referencing SCN 11.0, the version of software which was the subject of the trial.

### Honeywell's contentions

As preliminarily set forth above, Honeywell's initial argument is that no reason exists to make an exception to the "general rule that an injunction will issue when infringement has been adjudged," because no special circumstances weigh against such a grant.[17]   Honeywell contends that Universal's purported design around is not a defense to an injunction because, "the fact that the defendant has stopped infringing is generally not a reason for denying an injunction against future infringement unless the evidence is very persuasive that further infringement will not take place."[18]  As a result, Honeywell asserts, assuming *arguendo* that the purported "design around" does not infringe, that the evidence supporting Universal's claim that it will not revert

---

[16] *Federal Rule of Civil Procedure*  65(d). *See also* page 4 of this memorandum opinion.
[17] *See Richardson*, 868 F.2d at 1247; *W.L. Gore*, 842 F.2d at 1281; *Genentech, Inc.*, 826 F. Supp. at 829.
[18] *See W.L. Gore*, 842 F.2d at 1281-82.

back to infringing conduct is suspect and speculative at best.

Honeywell argues that, "even assuming everything Universal says about its allegedly non-infringing TAWS is true (or comes true), an injunction should issue against sale of Universal's *previous* TAWS and all other versions that are not more than colorably different." Honeywell notes that Universal will not be affected in any way by the grant of an injunction if it is successful with the design around; however, if Universal's assertions that SCN 11.2 does not infringe are unfounded, then an injunction is clearly warranted. Accordingly, Universal offers nothing more than a questionable assurance that it will not infringe, a point which weighs in Honeywell's favor since it has the right to exclude.

Regarding the issue of irreparable harm, Honeywell emphasizes that the cases uniformly hold that a patent holder is not required to show irreparable harm once infringement has been established. Honeywell points to prevailing law which holds that a patentee is "entitled to a *presumption* of irreparable harm as a result of the jury's finding of infringement."[19] Honeywell further supports its argument regarding irreparable harm by the finite nature of a patent. As Honeywell notes, the Federal Circuit has recognized that when expiration of a patent is near, equity favors the presumption of irreparable harm.[20] Honeywell asserts that there was no reason to enforce the '436 patent until Universal infringed, which occurred nearly 10 years after

---

[19] *Ciena Corp.*, 334 F. Supp. 2d at 612 (emphasis added); *see also Arthrocare Corp. v. Smith & Nephew, Inc.*, 310 F. Supp. 2d 638, 680 (D. Del. 2004)("*Arthrocare I*")("In matters involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement." (citing and quoting *H.H. Robertson Co. v. United Steel Deck Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987)(internal quotation marks omitted))).

[20] *See H.H. Robertson*, 820 F.2d at 390-91, ("Observing that 'this patent does not have many more years to run,' the District Court held 'the equities weigh heavily against the wrongdoer.'" (citation omitted)).

the patent was issued.  By then, half of the life of the patent had expired.  At present,

the '436 patent is nearly fifteen years old.  Honeywell relies on the language in

*Richardson* which emphasizes the need for injunctive relief to avoid irreparable harm

when limited time is left on the life of a patent.[21]

Honeywell further contends that its licensing of the '436 patent is irrelevant to the

question of whether Universal's infringement causes it irreparable harm.  Honeywell

asserts that its licensing does not preclude a permanent injunction since the patentee

has the paramount right "to exclude whomever it wishes from practicing the claimed

invention."[22]  It relies upon this court's language in *Arthrocare II* which found that "patent

rights are not compromised simply because one opted to license its patent to select

competitors.  'Once the patentee's patents have been held to be valid and infringed, he

should be entitled to the full enjoyment and protection of his patent rights.'"[23]  Thus,

Honeywell submits that no surrender of the right to a permanent injunction against

Universal has occurred.

Honeywell notes that Universal's contention that money damages are *per se* an

adequate remedy is contrary to the black letter law, because the ability to collect

damages awarded for *past* infringement has no bearing on the right to enjoin to prevent

*future* infringement.  According to the *Arthrocare I* court,  "the nature of the patent grant

. . . . weighs against holding that monetary damages will always suffice to make the

patentee whole, for the principal value of a patent is its statutory right to exclude."[24]

Moreover, the market effects of future infringement cannot be fully measured in

---

[21] *Richardson*, 868 F.2d at 1247.

[22] *See Odetics, Inc. v. Storage Technology Corp.*, 14 F. Supp. 2d 785, 794 (E.D. Va. 1998).

[23] *Arthrocare Corp. v. Smith & Nephew, Inc.*, 315 F. Supp. 2d 615, 621 (D. Del. 2004)("*Arthrocare II*")(quoting *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983)).

[24] *Arthrocare I*, 310 F. Supp. 2d at 680.

dollars,[25] because "there are certain tangential benefits associated with patent rights, such as marketplace reputation for enforcing one's patents, the value of which cannot be quantified in monetary damages."[26]

Honeywell's final argument relies on the public interest in the enforcement of patent rights: "[t]he public interest in preserving incentives to advance science and useful arts favors entry of an injunction to bar any further infringement,"[27] because, "if inventors cannot depend on their patents to exclude others, . . . research and development budgets in the science and technology based industries would shrink, resulting in the public no longer benefitting from the labors of these talented people."[28] Thus, Honeywell asserts that the public interest demands injunctive relief, because otherwise, the right to exclude would be diminished and innovation would suffer.[29]

## DECISION

The issue under consideration is whether Universal has presented a sound basis for denying the issuance of a permanent injunction.[30]  For the reasons explained below, the court finds that Universal has failed to provide sufficient reasons for denying injunctive relief.  Universal's arguments are unpersuasive and "ignore the paramount right of a patentee to exclude whomever it wishes from practicing the

---

[25] *Atlas Powder Co. v. Ireco Chemicals*, 773 F.2d 1230, 1233 (Fed. Cir. 1985).

[26] *Fisher-Price, Inc. v. Safety 1st, Inc.*, 279 F. Supp. 2d 526, 528 (D. Del. 2003).

[27] *Arthrocare I*, 310 F. Supp. 2d at 680.

[28] *E.I. duPont de Nemours & Co. v. Polaroid Graphics Imaging, Inc.*, 706 F. Supp. 1135, 1146 (D. Del. 1989).

[29] *Wesley Jessen Corp. v. Bausch & Lomb, Inc,*, 209 F. Supp. 2d 348, 403 n.12 (D. Del. 2002)(stating that "without the right to obtain an injunction, the right to exclude granted to the patentee would have only a fraction of the value it was intended to have, and would no longer be as great an incentive to engage in the toils of scientific and technological research")(quoting *Smith Int'l*, 718 F.2d at 1577-78 (internal quotation marks omitted)).

[30] See *Richardson*, 868 F.2d at 1247; *W.L. Gore*, 842 F.2d at 1281; *KSM*, 776 F.2d at 1524; *Tristrata*, 2004 WL 856595 at *1.

11

claimed invention."[31]

Initially, the court determines that Universal's argument that an injunction is not warranted due to its purported design around is unpersuasive. The Federal Circuit has stated that "the fact that the defendant has stopped infringing is generally not a reason for denying an injunction against future infringement unless the evidence is very persuasive that further infringement will not take place."[32] That principle derives from simple logic: when a defendant is in the position to resume infringing behavior, if that defendant is honestly professing its future intentions, an injunction will do no harm; however, if the defendant is inaccurate about or misrepresents its future intentions, then the court should prevent future infringement.[33] Those principles are particularly applicable to the instant matter.

If Universal gains market acceptance for SCN 11.2, then there is no temptation to infringe and an injunction will do no harm. If Universal's market expectations regarding SCN 11.2 are unfounded or overestimated, then an injunction is necessary to avoid the temptation to return to infringing behavior. Here, the evidence provided by Universal is little more than speculation and self-interested puffing. Since the evidence is clearly unpersuasive concerning Universal's future conduct, the presumption favoring injunctive relief has not been overcome.

Universal's argument that Honeywell's twelve year delay to enforce its patent rights as illustrative of a lack of irreparable harm ignores two central tenets: that a presumption of irreparable harm exists which is derived, in part, from the finite term of

---

[31] *Odetics*, 14 F. Supp. 2d at 794.

[32] *W.L. Gore*, 842 F.2d at 1281-82.

[33] *Id.* at 1282 (citing *General Elec. Co. v. New England Elec. Mfg. Co.*, 128 F. 738, 740 (2d Cir. 1904)).

the patent grant; and that the patentee has the statutory property right to exclude anyone at any time during that finite term.[34]  Universal's argument fails to acknowledge that Honeywell had no need or obligation to enforce the '436 patent until the infringing activities of Universal began.  Furthermore, the contention ignores the limited life that remains on the '436 patent, and that future litigation for infringement would likely continue beyond the patent's expiration date.[35]  Universal asks the court to improperly usurp Honeywell's statutory right to exclude at any time during the term of the patent.[36]

Universal's position that Honeywell forfeited the exclusivity of the patent by licensing it to others similarly ignores the patentee's right to exclude, and essentially mandates a license.[37]  Universal suggests that licensing is a *per se* compromise of the patent, an argument that was rejected by this court in *Arthrocare II*.  "Arthrocare's patent rights are not compromised *simply* because it opted to license its patents to select competitors."[38]  Thus, the court is not persuaded by Universal's arguments because, "once the patentee's patents have been held to be valid and infringed, he should be entitled to the full enjoyment and protection of his patent rights."[39]

Universal's arguments that an injunction is unnecessary and that there is no irreparable harm contradict prevailing precedent.[40]  Universal attempts to improperly shift the burden of proof to Honeywell by pointing to an alleged failure to show

---

[34] *See Richardson*, 868 F.2d at 1247 (citing *H.H. Robertson*, 820 F.2d at 390; *Smith Int'l*, 718 F.2d at 1581); *see also, e.g., Odetics*, 14 F. Supp. 2d at 795.
[35] *Richardson*, 868 F.2d at 1247.
[36] 25 U.S.C. § 154(a)(1).
[37] *Odetics*, 14 F. Supp. 2d at 794.
[38] *Arthrocare II*, 315 F. Supp. 2d at 621 (emphasis added).
[39] *Id.* (quoting *Smith Int'l*, 718 F.2d at 1582 (internal quotation marks omitted)).
[40] *See Richardson*, 868 F.2d at 1247; *W.L. Gore*, 842 F.2d at 1281; *KSM*, 776 F.2d at 1524; *see also H.H. Robertson*, 829 F.2d at 390; *Ciena Corp.*, 334 F. Supp. 2d at 612 (holding that, in matters involving patent rights, irreparable harm is presumed when a clear showing has been made of patent validity and infringement.); *Tristrata*, 2004 WL 856595 at *1.

13

circumstances necessitating an injunction, and thus, prove irreparable harm. Universal's arguments ignore the following presumptions: first, an injunction *is presumed* warranted, and *will issue* absent sound reasons for denial, when infringement has been found[41] and, second, irreparable harm *is presumed* once there has been a clear showing of infringement through a jury verdict.[42]

Although the aforementioned principles are rebuttable, Universal's evidence is inadequate and does not refute that the presumptions apply and that irreparable harm will occur. Universal fails to show why an injunction should not issue based upon its unconvincing argument that it will not revert back to infringing behavior.[43] Similarly, the presumption of irreparable harm does not evaporate simply because Honeywell did not seek immediate redress for infringement.[44] Neither argument means that infringement will lessen or end. Moreover, the act of licensing does not limit patent rights. The property rights conferred by a patent allow the patentee to selectively *include* and *exclude*.[45]

Further, money damages are not an adequate remedy because, "the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole, for the principal value of a patent is its statutory right to exclude."[46] Moreover, Universal's argument regarding money damages downplays the

---

[41] *Richardson*, 868 F.2d at 1247; *W.L. Gore*, 842 F.2d at 1281; *KSM*, 776 F.2d at 1524; *Tristrata*, 2004 WL 856595, *1.

[42] *Richardson*, 868 F.2d at 1247; *Ciena Corp.*, 334 F. Supp. 2d at 612.

[43] *W.L. Gore*, 842 F.2d at 1281-82 (noting that a defendant has the burden of proof, and very persuasive evidence is required to prevent the issuance of an injunction).

[44] *See Odetics*, 14 F. Supp. 2d at 795 (Which found, "[f]irst, simply because Odetics did not seek redress for its injury at the first available opportunity does not necessarily mean that such injury will not continue in the future and that it will not be irreparable.").

[45] *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983)(finding that the "right to exclude recognized in a patent is the essence of the concept of property").

[46] *H.H. Robertson*, 820 F.2d at 390 (citing *Connell*, 722 F.2d at 1548.).

14

nature and importance of the statutory right to exclude others, including the tangential benefits arising from that right.[47] As noted in *Atlas Powder*, while a monetary award is often an adequate remedy for past infringement, it does not follow that money relief is a sufficient remedy against future infringement.[48] Injunctive relief operates to protect the interests of a patentee against future infringement, the market effects of which may not be fully compensable in the form of monetary damages.[49] "If monetary relief were the sole relief afforded by the patent statute then injunctions would be unnecessary and infringers could become compulsory licensees."[50] As noted previously herein, licensing is a right to be exercised by the patentee, not an option of the infringer. Moreover, monetary damages alone are insufficient and will not make the patentee whole since they do not address the right to exclude.[51]

Additionally, the presumption for an injunction is not overcome by the argument that Honeywell will not gain a benefit from its issuance.[52] Universal's arguments also fail to address, "the public interest in preserving incentives to advance science and useful arts."[53] The patent law is largely premised on the desire to give inventors inducements to create, as well as, to reap the benefits of their labors.[54] "One of those benefits is the right to prevent others from practicing what they have invented."[55]

---

[47] See *Atlas Powder*, 773 F.2d at 1233 (citing *Smith Int'l*, 718 F.2d at 1577-78); *see also Fisher-Price*, 279 F.2d at 528.

[48] *Atlas Powder*, 773 F.2d at 1233.

[49] *Id.*

[50] *Arthrocare II*, 315 F. Supp. 2d at 621 (quoting *Atlas Powder*, 773 F.2d at 1233)(internal quotation marks omitted).

[51] *Arthrocare II*, 315 F.2d at 621(quoting *Hyberitech Inc. v. Abbott Labs*, 849 F.2d 1446, 1456-57 (Fed. Cir. 1988)); *Arthrocare I*, 310 F. Supp. 2d at 680 (citing *H.H. Robertson*, 820 F.2d at 390).

[52] See *Arthrocare I*, 310 F. Supp. 2d at 680; *Wesley Jessen*, 209 F. Supp. 2d at 403 n.12; *Polaroid*, 706 F. Supp. at 1146.

[53] *Arthrocare I*, 310 F. Supp. 2d at 680.

[54] *Id.*

[55] *Polaroid*, 706 F. Supp. at 1146.

15

Accordingly, "without the right to obtain an injunction, the right to exclude granted to the patentee would have only a fraction of the value it was intended to have, and would no longer be as great an incentive to engage in the toils of scientific and technological research."[56] Granting injunctive relief protects the value of the patent, and allows the public to garner the attendant benefits. Only if the public harm is so significant as to outweigh the patentee's right to exclude should an injunction be denied.[57] In this matter, Universal cannot point to any such harm since Honeywell has commercialized its invention and licenses it to other entities, thereby providing public access and competitive products. Therefore, in the absence of any substantial public harm, Honeywell's right to exclude should be enforced.

Finally, Universal's concerns regarding the scope of Honeywell's proposed order for an injunction have been alleviated since Honeywell has amended its proposed order to fit within the parameters requested by Universal. Moreover, a proposed order of a party is merely a suggestion to the court, which in its discretion will accept, reject or modify. In any event, Universal's objection to the scope of Honeywell's proposed order has been resolved.

## DISCUSSION

### Law Governing Universal's Motion for a Stay of a Permanent Injunction

Universal's request for a stay of a permanent injunction during the pendency of its post-trial motion is controlled by Rule 62(b) of the Federal Rules of Civil

---

[56] *Wesley Jessen Corp.*, 209 F. Supp. 2d at 403 n.12 (quoting *Smith Int'l*, 718 F.2d at 1577-78)(internal quotation marks omitted).

[57] *See Wesley Jesson Corp.*, 209 F. Supp. 2d at 404 (noting that "[i]n patent cases, courts only exercise their discretion to deny injunctive relief when the harm to the public is so severe that it outweighs the patentee's individual right to exclude").

16

Procedure, which states:

> STAY ON MOTION FOR NEW TRIAL OR FOR JUDGMENT:  In its discretion and on such conditions for the security of the adverse party as are proper, the court may stay execution of or any proceedings to enforce a judgment pending the disposition of a motion for a new trial or to alter or amend a judgment made pursuant to Rule 59, or a motion for relief from a judgment or order made pursuant to Rule 60, or of a motion for judgment in accordance with a motion for a directed verdict made pursuant to Rule 50, or of a motion for amendment to the findings of for additional findings made pursuant to Rule 52(b).

Thus, the decision to stay the issuance of a permanent injunction is within the sound

discretion of the court.  That discretion is largely shaped by the seminal case of

*Standard Havens Products, Inc. v. Gencor Industries, Inc.* which sets forth four criteria

for assessing the appropriateness of a stay of an injunction.[58]

> The four factors are:
>
> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and, (4) where the public interest lies.[59]

As with the factors applied when determining whether to grant a permanent injunction,

equal weight for each factor is not required since, "the formula cannot be reduced to a

set of rigid rules."[60]  A stay is an appropriate remedy if the movant "'can nonetheless

demonstrate a *substantial case* on the merits,' *provided* the other factors militate in

movant's favor."[61]

Thus, the four factors can effectively be merged and a sliding scale approach is

utilized, which states:  "[i]n considering whether to grant a stay pending appeal, this

---

[58] 897 F.2d 511, 512-13 (Fed. Cir. 1990).

[59] *Id.* at 512 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)(internal quotation marks omitted)).

[60] *Hilton*, 481 U.S. at 777.

[61] *Standard Havens*, 897 F.2d at 513 (quoting, *Hilton*, 481 U.S. at 778).

17

court assesses movant's chances for success on appeal and weighs the equities as they affect the parties and the public."[62]  Thus, the analysis applied is flexible.  The "factors, taken individually, are not dispositive; rather, the district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested."[63]  Under weight-based assessments, when the movant is more likely to succeed, the harm required to be shown is less; if success is less likely, then the harm needed must weigh more heavily in the movant's favor.[64]  Therefore, "[w]here the likelihood of success 'is less forceful. . . a movant would have to make a stronger showing of irreparable harm in order to tip the balance of equity in his favor.'"[65]

### Positions of the Parties

#### Universal's Contentions

Universal argues that a stay will maintain the *status quo* in a manner that will not cause irreparable harm to Honeywell, and also will prevent prejudice to Universal while its motion for judgment as a matter of law is under consideration. Universal cites *Standard Havens* and purports to have met the required factors by relying on its arguments previously addressed herein in opposition to Honeywell's motion for entry of a permanent injunction.  Rather than regurgitate the same arguments proffered in opposition to Honeywell's request for a permanent injunction, Universal summarized those arguments in a five-point list.  This list provides a summary of contentions already rejected by the jury. They are:

> With respect to Figure 4-25 of JTX 46, John Hansman did not

---

[62] *Id.* at 513 (citing *E.I. duPont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed.Cir. 1987); *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387-88 (7th Cir. 1984)).

[63] *Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1451 (Fed. Cir. 1988).

[64] *Roland Mach.*, 749 F.2d at 387-88.

[65] *Standard Havens*, 897 F.2d at 513 (quoting, *Smith Int'l*, 718 F.2d at 1581 n.7).

identify an "enabling envelope" as required by limitation 3 of asserted claim 1 (Trial Tr. 710-716);

David Powell, Universal's expert, testified that MGCB had no enabling envelope so it would not meet the requirements of limitation 3 (Trial Tr. 1653);

Dr. Powell also testified, without meaningful cross-examination, that the source code used to construct the MGCB alert envelope had no returns, *i.e.*, there was no way to exit and bypass that part of the code to disable the enabling envelope (Trial Tr. 1648-1651 and 1660-1661; JTX 42, page 0197764);

The parties agreed that the MGCB for SCN 11.0 was "always on" so the entire routine was active every second after takeoff (Trial Tr. 1650-1651 and 229); and,

There was no Universal document that identified an enabling envelope for SCN 11.0 (JTX 42 and 46).

Universal utilized this five-point list as a prologue, without addressing each point in

detail since such argument would be repetitious of its previously stated position.

### Honeywell's Contentions

Honeywell asserts that Universal has not met, and cannot meet, the

standard for obtaining a stay pending the resolution of its post-trial motion for judgment

as a matter of law because it has made an insufficient showing of success on the

merits. Honeywell further contends that Universal cannot point to any evidence

suggesting that a strong balance of the hardships fall in its favor.

Honeywell notes that three of the four *Standard Havens* factors were addressed

in its motion for a permanent injunction (i.e., irreparable harm, balance of the equities

and public interest). Moreover, Honeywell argues that, unlike the defendant in

*Standard Havens*, which faced bankruptcy in the absence a stay, Universal has

emphasized its solvency and capacity to pay monetary damages. Thus, Universal will

19

not be irreparably harmed if a stay is not entered, which must be balanced against the clear irreparable harm to Honeywell from continued infringement without a permanent injunction. Furthermore, Honeywell contends that the public interest favors the granting of an injunction, not a stay, in this matter.

Concerning the final requirement, likelihood of success on the merits, Honeywell contends that Universal has failed as a matter of law to make the requisite showing on this element. Honeywell notes that Universal's five-point list is merely a shortened restatement of its arguments previously rejected by the jury. According to Honeywell, Universal has to make a strong showing that no reasonable mind could have considered the evidence adequate to support the verdict. As the non-moving party, Honeywell claims that it is due "the benefit of all logical inferences that could be drawn from the evidence presented," by resolving all conflicts in the evidence in its favor, and in general, viewing the record in a light most favorable to it.[66]  Since Universal cannot overcome those hurdles, Honeywell contends that Universal is unable to make any showing that it will succeed.

### DECISION

The issue before the court is whether Universal has made an adequate showing that it will succeed on its motion for judgment as a matter of law. Without a strong showing, Universal must demonstrate a substantial case on the merits with the remaining three factors under *Standard Havens* militating in its favor.[67]  For the reasons explained below, the court finds that Universal has failed to make an adequate showing

---

[66] *See Eaton Corp. v. Parker-Hannifin Corp.*, 292 F. Supp. 2d 555, 566 (D. Del. 2003).

[67] *See Standard Havens*, 897 F.2d at 513 (quoting *Hilton*, 481 U.S. at 778 ("A stay was appropriate: '[w]here [movant] establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits,' provided the other factors militate in movant's favor.")).

that it will succeed on the merits and cannot demonstrate that the *Standard Havens* factors weigh in its favor. As a result, Universal's motion for stay of the entry of a permanent injunction is denied.

The court finds that Universal cannot make a strong showing that it will succeed on its motion for judgment as a matter of law. Universal's five-point list is far from satisfying the standard evoked by the first factor set forth by the court in *Standard Havens*. Although the likelihood of success is not a rigid concept, Universal's five-point list provides inadequate foundation to support this element. While there may be a "fair" or "better than negligible chance" that Universal will prevail on each of the asserted grounds, that possibility does not meet the required burden of proof.[68] Moreover, the equitable factors do not militate in favor of Universal.

The other *Standard Havens* factors do not militate in favor of Universal for the reasons already explained in the court's decision on Honeywell's motion for entry of a permanent injunction. First, maintaining the *status quo* via a stay, as suggested by Universal, is inappropriate because there lack equitable reasons to protect Universal as an entity.[69] Second, Universal will not be irreparably injured absent a stay because, as was discussed above, Universal is a solvent entity capable of surviving the jury award. Third, as has been previously discussed at length, Honeywell is due a presumption of irreparable harm that has not been overcome in this matter; thus, a stay will substantially injure its protected interests. Finally, as was laid out in detail above, the

_____

[68] *Standard Havens*, 897 F.2d at 515 (stating that "[i]n assessing Gencor's basis for asserting it will prevail on the merits of the appeal, we determine that whether or not applicant has shown a strong likelihood of success, it has demonstrated not only a 'fair' or 'better than negligible chance' of succeeding on the issue of obviousness, but a 'substantial case' on each of the asserted grounds.").

[69] *Standard Havens*, 897 F.2d at 512 (quoting *Washington Metro Area Transit Comm'n v. Holiday Tours*, 559 F.2d 841, 844 (D.C. Cir. 1977) (noting that maintenance of the status quo is appropriate only where there is substantial equity, and need for judicial protection, whether or not the movant has shown a mathematical probability of success.)).

21

public interest lies in protecting patent rights through the grant of injunctive relief so inventors have incentive to create.

**CONCLUSION**

For the reasons set forth above, Honeywell's motion for the entry of a permanent injunction is granted and Universal's motion for stay of the entry of an injunction is denied.  An appropriate order consistent with this opinion shall be entered.